STEPTOE, JUDGE:
This claim arises out of a one-car automobile accident which took place at approximately 11:12 a.m. on 2 March 1988, in Kanawha County, West Virginia, on West Virginia, on West Virginia State Route 622, a two-lane road also known as Martins Branch Road and hereinafter referred to as “the highways.” As a result of the accident Arles B. Halley (“the claimant”) sustained the total loss of the motor vehicle he owned and had been operating, and grievous and permanent injuries, and incurred large medical expenses.
*80 It is alleged by the claimant that he “...drove his vehicle over a defect in the highway which threw him to the right high berm then to the left and over an embankment.”, and, inferentially, that his property damage and personal injuries were proximately caused by the negligence of the respondent in failing in its duty to keep the public highway in a safe condition for the benefit of the motoring public.
Respondent denies that it was negligent, and invokes the affirmative defense of comparative negligence.
The accident was investigated by Sgt. Michael Y. Rutherford, of the Kanawha County Sheriffs Department, who arrived on the scene at 11:33 a.m., some 25 minutes after the accident. Sgt. Rutherford, who has had considerable training at the West Virginia State Police Academy and extensive experience in preparing automobile accident reports, did a thorough job of investigation and reporting of the accident. According to his report, a copy of which appears in the record as part of Claimant’s Exhibit NO. 1, the accident happened in daylight, the weather was cloudy, the road surface was blacktop and was dry, there were no traffic controls at the scene, no other vehicle was involved, the vision of the claimant (driver) was not obscured and he did not smell of alcohol; no statement was taken from the claimant at the scene because of the severity of his injuries. It was also reported by Sgt. Rutherford that the front of the claimant’s vehicle and the entire driver’s side were points of initial contact with a utility pole just south of the highway. The officer placed the scene of the accident on West Virginia 622, about 2.7 miles west of U.S. Route 21, and testified that the claimant had been driving in a westerly direction.
Uncontroverted testimony of a witness for the respondent was to the effect that the highway, at the scene of the accident, was 18 feet, 8 inches wide, divided into two lanes of 9 feet 4 inches, each. Other evidence disclosed that the middle of the highway at the scene was conspicuously marked by two yellow lines.
The claimant testified that his speed had been 30 miles per hour as he approached the scene, which he had reduced to 23 or 24 miles per hour. He was steering with one hand when, he said, the steering wheel was jerked out of his hand when the car hit a bump in the road, and he was shaken up and the car shortly “was into that telephone pole,” thereafter he had no recollection of what happened. He testified that, before the accident, he did not know the speed limit at and just before the place where his car swerved out of control, and that he saw no speed signs while approaching the place of the accident.
A witness for the claimant, Kenneth R. Stone, testified that he lived in the immediate vicinity of the scene of the accident; his attention to the claimant’s car was attracted by the noise of the squealing of tires as it came down the road and then went sideways across the road from the northern side to the southern side. He observed it hit a telephone pole on the southern side of the road and said that it was going “sort of airborne and landed in my dad’s driveway.” He gave as his opinion that the speed of the car, when he first saw it, was at least 35 miles per hour. He also testified that he was familiar with a hump in the surface of the highway where claimant’s car went out of control; that the respondent, when repaving the road in the past, found *81 and attempted to remove the hump caused by subterranean pressures, but that the hump always came back; and that there had been complaints to respondent about the hump, or surface irregularity, prior to this accident.
Each party presented an audio/video tape of the scene of the accident and the approach hereto from the east, and both tapes were admitted into evidence without objection. Claimants’ tape was made 12 March 1988, while the tape of the respondent was made 3 April 1991, but both showed the same speed limit sign of 35 miles per hour approximately one-tenth of a mile before reaching the accident scene.
Findings of Pact on Issue of Liability
The Court makes the following findings of fact based upon the record herein, including evidence admissible under the rules of evidence:
1) The bump or hump, or irregularity in the surface of the pavement of the highway at the scene of the accident, alleged by claimants to have caused the claimant to lose control of his vehicle, was a raised area in the surface of the road which measured 12 feet in length, 7 feet in width, and a maximum height of 5 inches, all of which area was covered with asphalt faired snugly to the regular road surface. From the claimants’ audio/video tap, it appears that fifteen vehicles, apparently selected at random, passed over the irregularity in the westbound lane of traffic, at speeds estimated to be 25 miles per hour to 50 miles per hour, without reducing speed or deviating from their chosen direction, but each showed a downward movement of the forward part of the car upon reaching the westerly end of the irregular area, which movement was absorbed by shock absorbers and each car passed on without incident. Tests made by the investigating officer produced like results.
2) The claimant, proceeding in a westerly direction along the highway, failed to see a sign one-tenth of a mile from the accident scene, stating that the speed limit was 35 miles
per hour, and he testified that before the accident he did not know what the speed limit was in the area.
3) Immediately before and at the time his car passed over the bump, the claimant was driving his car with only one hand on the steering wheel.
4) After having passed over the bump, claimant’s vehicle swerved to the right and entered the berm 140 feet down the road at a point designated as “tiremark” on the diagram made part of the investigating officer’s report. West-tending tiremarks continued 262 fee, eventually crossing the highway, and across the southerly berm, and striking a utility pole, the base of which, at ground level, was several feet below the level of the highway; the front and left side of the car struck the pole at highway level, with such force that the pole was partially splintered and its lower *82 end was moved in its hole some inches. The vehicle came to rest, on its tires, in a paved private driveway, a few feet below the level of the base of the pole and facing in a westerly direction. The grass-covered slope between the highway and said driveway, of a width of some twenty feet, in the middle of which was the utility pole, was but little disturbed by the car in its passage from the highway to the driveway, a fact which is corroborative of the statement of the eyewitness Stone, that the car “...was sort of airborne...” at the time.
Conclusions of Law
1)The State of West Virginia in neither an insurer nor a guarantor of the safety of motorists on its highways. Adkins v. Sims, 130 W. Va. 645, 46 S.E.2d 81 (1947). An award may be made by this Court to a person traveling on a public road, however, if it be proven by a preponderance of the evidence that the State was negligent in the maintenance of the road, and having notice of defect or dangerous condition in the road, did not promptly take corrective measures, and a traveler sustained damages to his person or property as a proximate result of said negligence.
In this case there existed on 2 March 1988 an irregularity in the level of the surface of the highway over which the claimant was driving, caused by some natural phenomenon not identified or described in the record, which irregularity had been corrected from time to time but which regularly recurred and was patched and repatched. The speed limit at that point was 35 miles per hour, as posted by a sign one-tenth of a mile east of the irregularity, and there was another sign, two-tenths of a mile east of the irregularity, advising of rough road ahead.
The record does not show any previous accident, at this point in the road, which was reported to authorities.
It is the opinion of the Court that the irregularity in the road surface was not, of itself, a dangerous condition or a hazard to drivers approaching it from the east at a lawful speed, and that respondent was not negligent in its maintenance of the highway.
2) The very force of the claimant’s vehicle when it struck the utility pole at the end of a measured 262-foot skid indicates a high rate of speed at that time and an even higher rate of speed and failure to keep his vehicle under control were the moving proximate causes of the accident and the damages which the claimant sustained.
3) The claimant was negligent in failing to observe and comply with posted speed limits, in failing to keep both hands on his steering wheel, and in failing to keep his vehicle under control, and his failures aforesaid were the proximate causes of his damages.
As the Court has determined that the respondent was not negligent, it is unnecessary to discuss damages or the claim of Mrs. Halley. Accordingly, the Court must deny this claim.
*83 Claim disallowed.